Hobstadtbb, J.
(dissenting). I dissent. In the early morning of New Year’s Day, 1954 little Theodore Finley, then 3% years old, was sleeping with his parents in their bed in a small, shabby flat in Harlem. Attacked and bitten on his face by a large and savage rat, the child screamed. His awakened father, also bitten by the rat, found blood on the boy’s head and face. After washing off the blood, he took his terrified son to a hospital where he was given an anti-tetanus injection and his wounds cauterized. Thereafter, the boy was treated by a private physician. The wound over the right eye has left the child with a permanent visible scar.
Since the occurrence the child has suffered fright and jumped in his sleep; what psychological scars result from the horrifying experience cannot be measured with precision. Moral disfigurement has its roots in the early formative years; the memory of so terrible and macabre an experience as a rat bite can sear the soul of a child of tender age.
The defendant’s liability was clear. In the Finley flat there were holes everywhere; the landlord had been repeatedly advised but no repairs were made. Garbage disposal was neglected by a slovenly superintendent, and refuse was permitted to accumulate in the halls and alleyways; attracting rats and roaches that made frequent appearance in and about the premises. Nothing was done by the defendant though frequently notified. The evidence demonstrates that the landlord suffered his property to become one of the mean and squalid tenements of a city slum.
*370 The insensitivity of absentee landlordism which debases the homes of the poor should not be lightly condoned. Those who own and profit from dwelling places must keep them fit for human habitation. A building infested with rodents does not meet this standard, either morally or legally.
On a compelling basis, the jury adjudicated the liability of this landlord; and under proper instructions, assessed a just measure of damages. It was not within the competence of the Trial Judge to nullify their determination; and it is not a proper exercise of our province to sustain his action.
In this area, judicial action will find its safest guide in humility and self-restraint. If the jury system is to serve its intended purpose, every presumption must operate in favor of the jury’s verdict, especially a finding of'the amount of damages for a personal injury. Neither a trial judge nor an appellate court is better qualified than a jury to assess accurately the measure of mischief of a ratbite. This boy has not alone a permanent visible scar over his eye, but the lasting memory of a horrific experience. So far as the injury he suffered can be compensated in dollars and cents, we should accept the jury’s estimate of the amount he should receive. Because it is not so disproportionate to the harm done as to lack rational basis or to shock one’s sense of right, the jury’s pronouncement should be final.
The distrust of juries expressed in and outside our profession, on occasion, is not warranted. In deciding who is right and who is wrong the jury’s judgment is as good as, and sometimes apt to be better than, that of the judge. Experience in Trial Term has been that in 95% of the cases the same result is achieved by juries as by the court without a jury. “We are not obliged to make the assumption that the jury box was filled by men totally devoid of reasoning power and wholly lacking common sense,” the Court of Appeals has admonished us. Indeed, the “ rough justice,” so-called, which a jury may dispense, more nearly corresponds to the true justice of the cause than the sometimes over-refined adjudication of a court without a jury. That is why, perhaps, even in equity courts, juries may be invoked to “ inform the conscience ” of the chancellor.
The spate of verdicts set aside by both trial courts and appellate tribunals is to be deprecated. “ There is no objective standard to apply” the decision must come “to rest on the sense of the judge addressed to the reasonableness of the jury’s verdict; but this in turn is a subjective process strikingly similar to the jury’s own judgment of the facts in the first place.” (Rapant v. Ogsbury, 279 App. Div. 298, 299.) All too often *371 misgivings directed at a particular verdict are a reflection of an unconscious suspicion of juries generally. But the judicial system can be as strong as the judge. Judicial leadership can obviate the necessity of setting aside a verdict. If the judge retains “ creative command ” of the course of action, the jury will instinctively absorb the objective direction it is his function to provide.
In short, no trial or appellate court, in the purported exercise of legal power, has the moral right to upset a jury verdict unless it “ startles by its absurdity ” and does violence to the “ compulsion of reasonable necessity ”,— in effect, unless the result is one which no reasonable man could have reached (Rapant v. Ogsbury, supra, p. 300). This verdict cannot be so regarded. The order should be reversed and the verdict reinstated.
Steuer and Hecht, JJ., concur in Per Curiam opinion; Hoestadter, J., dissents in opinion.
Order affirmed, etc.